1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH WAYNE WEBB,

               Petitioner,

    v.

ALICE PAYNE,

               Respondent.

Case No.  C05-5088RJB-KLS

REPORT AND
RECOMMENDATION

Noted for December 1, 2006

Petitioner is a state prisoner currently incarcerated at McNeil Island Corrections Center, located in Steilacoom, Washington.  This matter is before the Court on his second amended petition for writ of *habeas corpus* filed with this court pursuant to 28 U.S.C. § 2254.  Respondent has file the relevant state court records and answered the petition.  Petitioner has filed a reply to respondent's answer.  Both parties also have been given the opportunity to provide additional briefing on the remaining issues concerning petitioner's petition.  Thus, the case is ripe for review and a decision by the Court, and the undersigned submits this report and recommendation for the honorable Robert J. Bryan's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On November 18, 1997, petitioner was found guilty of rape in the first degree and assault in the second degree in Mason County Superior Court following a trial by jury.  Respondent's Submission of

Relevant State Court Record ("Record"), Exhibit 10, p. 1 (Dkt. #16).  The Washington State Court of

Appeals, Division II, summarized the relevant facts of this case as follows[1]:

> Joseph Webb was charged with and convicted of first degree rape and second degree assault of LouAnn Garner.  The rape charge alleged that he engaged in sexual intercourse with Garner by forcible compulsion and that he inflicted serious physical injury.  The assault charge alleged that he committed assault on another with intent to commit rape.
>
> Garner testified that Webb approached her as she was walking home from the Hungry Bear Cafe.  As Garner started walking, she noticed Webb behind her.  At some point, he approached her and made small talk.  At first, she was not concerned because she assumed he was just going home, but she tried to walk where there was light.  Webb told her to take her clothes off.  Garner sarcastically said, "yeah," meaning "yeah, right."  Then, Webb grabbed her by the hair and tried to make her kiss him.  He knocked her to the ground and hit her, and she then took her clothes off.  She testified that the assault happened "right in the beginning."  "I believe I was hit before I even had my clothes off.  I was also knocked to the ground many times and was in and out."
>
> Webb got on top of her but she resisted.  In response, he hit her, pulled her hair and held her down with his body.  She could feel his penis inside her vagina but he did not ejaculate.  She kept moving around "but he's obviously--he was there."  She said he attempted anal intercourse, but she did not remember any penetration.  He also put his penis in her mouth.  When asked at trial whether he was beating her at that time, Garner said, "Always."  "Every time he was trying to do anything with my body, he was always hitting me.  It was almost more about beating me than, you know . . . I was always being hit by him."  She tried to run away at least three times, but each time he dragged her back.  She struggled throughout the attack, which lasted about forty-five minutes.  Garner testified that she "was not cooperative in any way," which made Webb mad and "That's where I guess all the beating and, you know, violence came out.  But it's better than having him touch you, you know."
>
> Dr. John Holmes, the emergency physician who treated Garner the night of the attack, diagnosed sexual and physical assault, nasal fracture, and multiple contusions and abrasions.  Garner had scrapes and abrasions on both elbows and knees and one shoulder and looked like someone who had fallen out of a car.  She told Dr. Holmes that she had been physically assaulted and raped, that she had been "grabbed, dragged into an alley and assaulted," that she had been raped five times, including vaginal and anal intercourse, and that she had been forced to perform oral sex on her attacker.  On cross-examination, Garner explained that, when she told Dr. Holmes she had been raped five times, she was referring to "[a]ttempts . . . [t]he ways of doing it."  She testified that Webb did not ejaculate "but he did enter me."
>
> During his examination, Dr. Holmes did not find any semen, which he explained does not mean that a sexual assault did not occur.  He also did not find any cuts or bruises or injuries to the vaginal or rectal areas.  On direct examination, Holmes testified that the absence of trauma did not concern him because it is possible for a woman who has previously had sexual intercourse to have intercourse without showing signs of injury.  When asked whether this was possible even if force is used, Holmes said, "I'm sure it's possible."  On cross-examination, he was asked whether he would expect to see more trauma involved from the rapes.  He responded with a "solid maybe" and explained that he has seen rape victims that show signs of injury and those that do not.  He also agreed that, other than the fact that she was naked and told him she had been raped, there was nothing about her physical presentation to indicate penetration.

---

[1]Petitioner takes issue with how the court of appeals characterized these facts.  However, after reviewing the entire trial transcript and other relevant state court records, the undersigned finds that the court accurately summarized the events in question here.

REPORT AND RECOMMENDATION
Page - 2

Id., Exhibit 3, pp. 2-4 (internal footnote omitted).

Petitioner was sentenced to 147 months of confinement for the rape conviction, 14 months of confinement for the assault conviction, and 36 months of community custody. Id. at p. 5.  He appealed his conviction both through his assigned counsel and *pro se*, arguing in part that because it merged with the rape conviction, the assault conviction should have been dismissed. Id., Exhibit 3, p. 1, and Exhibits 11 and 12.  On September 29, 2000, the Washington State Court of Appeals agreed with petitioner in regard to the merger issue, and remanded the matter to the trial court for re-sentencing under the merged rape conviction. Id. at p. 14.  It rejected the remaining issues petitioner had raised in his *pro se* brief, however, and thus otherwise affirmed his conviction. Id.

On October 17, 2000, plaintiff filed a *pro se* motion for reconsideration of the court of appeals' decision affirming his conviction, which the court of appeals denied without comment on October 26, 2000. Id., Exhibits 15 and 16.  On November 30, 2000, pursuant to the court of appeals' remand order, the trial court re-sentenced petitioner to 123 months of confinement on the rape conviction and 36 months of community custody. Id., Exhibit 1, p. 5.  On December 26, 2000, petitioner filed with the Washington State Supreme Court a *pro se* petition for review of the decisions of the court of appeals regarding his appeal and motion for reconsideration, which was denied without comment on March 6, 2001. Id., Exhibits 18 and 20.

Petitioner filed a motion for relief from judgment and/or motion for new trial with the trial court on June 4, 2001, which was denied on August 30, 2001. Petitioner's Additional Submission of Relevant State Court Record ("Additional Submission"), Appendix A (Dkt. #20); Record, Exhibit 22, pp. 15-17.  He then, both through assigned counsel and *pro se*, appealed the trial court's denial to the Washington State Court of Appeals. Record, Exhibits 29 and 30.

The court of appeals denied petitioner's appeal on October 18, 2002. Additional Submission, Appendix B (Dkt. #21).  On July 16, 2003, petitioner filed a *pro se* petition for review of the court of appeals' denial with the Washington State Supreme Court. Id., Exhibit 25.  The supreme court denied that petition without comment on February 4, 2004. Id., Exhibit 28.  Petitioner filed his federal *habeas corpus*

petition with this Court on January 31, 2005.[2] (Dkt. #1).

On October 3, 2005, the undersigned issued an order to show cause informing petitioner that the petition he had filed contained both exhausted and unexhausted federal claims, and thus was mixed. (Dkt. #22). The undersigned specifically found that only the following claims had been properly exhausted:

    (a)    prosecutorial misconduct: (i) improper jury instructions were presented that relieved the state of its burden of proving sexual intercourse as an element of first degree rape, instead of requiring proof of only sexual contact (Petition, pp. 5(e)-(f)); and (ii) there was insufficient medical and other evidence on which the state could prove the sexual intercourse element of the charge of rape in the first degree (Petition, pp. 5(g)-(i));

    (b)    the trial court abused its discretion by allowing the state to add a jury instruction, which allowed the state to "find guilt of a non-existent crime . . . through alternate means" (Id., p. 5(p)); and

    (c)    defense counsel was ineffective in: (i) not properly cross-examining "the accusing witness which in turn got Petitioner's private investigator's rebuttal testimony denied" (Id., p. 5(r)); (ii) not objecting to "crime scene" photographs being used as evidence at trial "without any DNA analyzation to match" petitioner (Id., p. 5(s)); (iii) not combining count I (rape in the first degree) and count II (assault in the second degree) before trial (Id.); (iv) not objecting to the addition of a jury instruction that allowed the state to find guilt of a "non-existent" crime "through alternative means" (Id.); and (v) not submitting her own jury instructions (Id., p. 10).

Accordingly, the undersigned directed petitioner to file either an amended petition setting forth only those claims noted above that the court found to be fully exhausted or a response stating he would return to state court to exhaust the remaining claims.

On April 14, 2006, plaintiff filed an amended petition, which contained those issues noted above. (Dkt. #29). However, because the amended petition also included an additional issue the undersigned previously had found to be unexhausted, on May 2, 2006, petitioner was ordered to file a second amended petition containing only those issues that specifically were found to have been fully exhausted. (Dkt. #30). On May 30, 2006, petitioner filed his second amended petition (Dkt. #32), which the undersigned found contained only those fully exhausted issues noted in its first order to show cause (Dkt. #33). Respondent

---

[2]Although the petition was date stamped February 2, 2005, by the clerk, and therefore was actually filed with this court on that date, it was signed by petitioner on January 31, 2005. (Dkt. #1). Presumably this is the date petitioner delivered it to prison authorities for forwarding to the court. See Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("[F]ederal and state habeas petitions are deemed filed when the pro se prisoner delivers them to prison authorities for forwarding to the Clerk of the Court."). This is the date respondent also indicates should be used to determine when petitioner filed his petition with this court. See Respondent's Answer, p. 6 (Dkt. #15). Accordingly, the date petitioner signed his petition shall be treated as the date he filed it with this court.

1    and petitioner were allowed to file a response thereto and reply respectively.

2        Although both parties did so (Dkt. #34-#35), upon further review of the record, the undersigned

3    found that petitioner's improper jury instruction and insufficiency of the evidence claims (i.e., (a)(i) and

4    (a)(ii) noted above) were erroneously referred to as prosecutorial misconduct claims. (Dkt. #36).  As each

5    of those claims had been fully exhausted, however, the undersigned did not find it necessary for petitioner

6    to amend his petition yet again.  The undersigned though did recognize its prior orders may have caused

7    some confusion regarding the nature of those claims, and thus gave the parties the chance to file further

8    briefing regarding them.

9        Accordingly, only the following claims currently are before the Court for consideration pursuant to

10   petitioner's second amended petition:

11       (1)    Improper jury instructions were presented that relieved the state of its burden of
              proving sexual intercourse as an element of first degree rape, and instead
12            required proof of only sexual contact;

13       (2)    There was insufficient medical and other evidence on which the state could prove
              the sexual intercourse element of the charge of rape in the first degree;
14

15       (3)    The trial court abused its discretion by allowing the state to add a jury
              instruction, which allowed the state to find guilt of a non-existent crime through
16            alternate means; and

17       (4)    Defense counsel was ineffective in:

18            (i)    not objecting "to the addition of a jury instruction . . . which allowed the
                   state to find guilt of a 'non-existent' crime, . . . 'through alternative
19                 means'";

20            (ii)   not properly cross-examining "the accusing witness which in turn got"
                   petitioner's "private investigator's rebuttal testimony denied";
21

22            (iii)  not objecting to "'crime scene' photographs being used as evidence at
                   trial 'without' any DNA analyzation to [']match'" petitioner;
23
              (iv)   not combining "count I (rape in the first degree) and count II (assault in
                   the second degree) before trial";
24
              (v)    not submitting her own jury instructions "which would have shown how
25                 the evidence presented contradicted a sex act."

26   Second Amended Petition, pp. 5(f)-5(g).  However, after reviewing petitioner's second amended petition,

27   all of the parties briefing and other submissions in this matter, and the remaining record, the undersigned

28   recommends that the Court deny the petition for the reasons set forth below.

                          <u>NO EVIDENTIARY HEARING IS REQUIRED</u>

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  Under 28 U.S.C. § 2254(e)(1), the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  On the other hand, if the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows:

> (A) the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2).

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).  It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original).  As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not required if motion, files and records of case conclusively show petitioner is entitled to no relief) (quoting 28 U.S.C. § 2255).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177.  Because, as discussed below, the issues raised by petitioner may be resolved based solely on the state court record and he has failed to prove his allegation of constitutional

1  errors, no evidentiary hearing is required.

2                              <u>DISCUSSION</u>

3  I.      <u>Standard of Review</u>

4          A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a

5  judgment of a state court:

6          [S]hall not be granted with respect to any claim that was adjudicated on the merits in
           State court proceedings unless the adjudication of the claim--
7
8              (1) resulted in a decision that was contrary to, or involved an unreasonable
               application of, clearly established Federal law, as determined by the Supreme Court
               of the United States; or
9
               (2) resulted in a decision that was based on an unreasonable determination of the
10             facts in light of the evidence presented in the State court proceeding.

11 28 U.S.C. § 2254(d).  Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such relief may

12 be obtained. <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000).

13         Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly

14 established precedent if the state court applies a rule that contradicts the governing law set forth" in the

15 Supreme Court's cases. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-

16 06).  A state court decision also is contrary to the Supreme Court's clearly established precedent "if the

17 state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme

18 Court, "and nevertheless arrives at a result different from" that precedent. <u>Id.</u>

19         A state court decision can involve an "unreasonable application" of the Supreme Court's clearly

20 established precedent in the following two ways: (1) the state court "identifies the correct governing legal

21 rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or

22 (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new

23 context where it should not apply or unreasonably refuses to extend that principle to a new context where

24 it should apply." <u>Williams</u>, 529 U.S. at 407.  However, "[t]he 'unreasonable application' clause requires

25 the state court decision to be more than incorrect or erroneous." <u>Lockyer</u>, 538 U.S. at 75.  That is, "[t]he

26 state court's application of clearly established law must be objectively unreasonable." <u>Id.</u>

27         Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if

28 a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of

1  the evidence presented in the State court proceeding.'" <u>Juan H. V. Allen</u>, 408 F.3d 1262, 1270 n.8 (9th Cir.

2  2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  As noted above, however, "[a] determination of a

3  factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of

4  rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

5  II.    <u>Scope of Review and Harmless Error</u>

6          The district court may not "reexamine state-court determinations on state-law questions." <u>Estelle v.</u>

7  <u>McGuire</u>, 502 U.S. 62, 67-68 (1991).  Thus, the court "is limited to deciding whether a conviction violated

8  the Constitution, laws, or treaties of the United States." <u>Id.</u> at 68; <u>see also</u> <u>Smith v. Phillips</u>, 455 U.S. 209,

9  221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may

10  intervene only to correct wrongs of constitutional dimension.").  In addition, for federal *habeas corpus*

11  relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in

12  determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (citation omitted).  In

13  other words, a petitioner is "not entitled to habeas relief based on trial error," unless he or she "can

14  establish that it resulted in 'actual prejudice.'" <u>Id.</u>

15  III.   <u>Improper Jury Instructions Claim</u>

16          Petitioner claims the jury instructions presented at his criminal trial were improper, because those

17  instructions allowed the state to establish the crime of first degree rape by proof of mere sexual contact,

18  rather than actual intercourse.  This lowering of the burden of proof, petitioner asserts, violated his federal

19  due process rights.  Respondent argues petitioner's claim must fail, because it concerns solely a state law

20  claim, and thus is not a proper issue for federal *habeas corpus* relief.  Respondent further argues that to the

21  extent the particular jury instructions at issue here contained any error, that error merely increased the

22  burden on the state, and therefore did not prejudice petitioner.

23          As explained above, "federal habeas corpus relief does not lie for errors of state law." <u>Estelle</u>, 502

24  U.S. at 67 (citation omitted).  A state court, furthermore, is presumed to properly apply the law of its own

25  state, and, as such, the federal courts "are bound by" that court's "construction of its own penal statutes,"

26  unless "its interpretation is 'untenable or amounts to a subterfuge to avoid federal review of a

27  constitutional violation.'" <u>Woratzeck v. Stewart</u>, 97 F.3d 329, 336 (9th Cir. 1986); <u>Aponte v. Gomez</u>, 993

28  F.3d 705, 707 (9th Cir. 1993) (citation omitted); <u>see also</u> <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 85 (1986)

("It goes without saying that preventing and dealing with crime is much more the business of the State than

1    it is of the Federal Government.").

2        Normally, it is within the state's authority "to regulate procedures under which its laws are carried

3    out, including the burden of producing evidence and the burden of persuasion." McMillan, 477 U.S. at 85

4    (citation omitted).  The Due Process Clause of the Fourteenth Amendment also "requires the prosecution

5    to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which

6    the defendant is charged." Id. (emphasis in original) (citation omitted).  Thus, "[w]hile 'there are obviously

7    constitutional limits beyond which the States may not go in this regard,' . . . 'the applicability of the

8    reasonable-doubt standard . . . has always been dependent on how a State defines the offense that is

9    charged in any given case.'" Id. (citation omitted).

10       The state's definition of a given offense, therefore, "is not subject to proscription under the Due

11   Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our

12   people as to be ranked as fundamental.'" Id. (citation omitted).  As such, the "[f]ailure to give an

13   instruction which might be proper as a matter of state law does not amount to a federal constitutional

14   violation." Miller v. Stagner, 757 F.2d 988, 993 (9th Cir. 1985).  Further, "[i]n the absence of a federal

15   constitutional violation, no relief can be granted even if the instruction given might not have been correct

16   as a matter of state law." Mitchell v. Goldsmith, 878 F.2d 319, 324 (9th Cir. 1989).

17       Accordingly, "before a federal court may overturn a conviction resulting from a state trial in which"

18   a challenged "instruction was used, it must be established not merely that the instruction is undesirable,

19   erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the

20   Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973).  A federal court's review thus "is

21   limited to determining whether an allegedly defective jury instruction 'so infected the entire trial that the

22   resulting conviction violates due process.'" Carriger v. Lewis, 971 F.2d 329, 334 (9th Cir. 1992) (quoting

23   Cupp, 414 U.S. at 147).

24       The petitioner also "must establish that there was a reasonable likelihood that the jury applied the

25   instruction in a way that violated" the constitutional right. Id. (citing Estelle, 502 U.S. at 72).  Federal

26   courts, however, must keep in mind "the well established proposition that a single instruction to a jury may

27   not be judged in artificial isolation, but must be viewed in the context of the overall charge:

28            While this does not mean that an instruction by itself may never rise to the level of
             constitutional error, . . . it does recognize that a judgment of conviction is commonly the
             culmination of a trial which includes testimony of witnesses, argument of counsel,

receipt of exhibits in evidence, and instruction of the jury by the judge.  Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

Cupp, 414 U.S. at 146-47 (internal citation omitted).

As noted above, petitioner argues that because the jury instructions setting forth the elements for the crime of first degree rape which were presented at his criminal trial relieved the state of its burden of proving sexual intercourse as an element of that crime, his due process rights were violated, and thus his conviction must be overturned.  However, not only does petitioner fail to prove his federal due process rights were violated by the jury instructions as presented, but he also fails to show any error contained in those instructions under state law prejudiced him.

The particular jury instructions at issue here read as follows:

### INSTRUCTION NO. 6

A person commits the crime of rape in the first degree when that person engages in sexual intercourse by forcible compulsion when the perpetrator inflicts serious physical injury.

### INSTRUCTION NO. 7

Sexual intercourse means that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight, or any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

### INSTRUCTION NO. 8

Sexual contact means any touching of the sexual or other intimate parts of a person done for the purposes – or purpose – of gratifying sexual desires of either party.

Record, Exhibit 8, p. 450.  Regarding the issue of requiring proof of actual intercourse – i.e., penetration of the female sexual organ by the male sexual organ – versus sexual contact, these jury instructions clearly "essentially track" state law legislative definitions in this regard as found by the Washington State Court of Appeals. See Record, Exhibit 3, p. 12.

Specifically, the Washington state statutory definition of rape reads in relevant part:

(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator . . .

(c) Inflicts serious physical injury, including but not limited to physical injury which renders the victim unconscious.

RCW 9A.44.040.  The term "sexual intercourse" also is defined by statute, which reads in relevant part:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and . . .

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

RCW 9A.44.010.  The term "sexual contact" in turn is statutorily defined to mean "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

Petitioner first argues the "sexual contact" definition was improperly presented to the jury as an alternate means for finding guilt.  That definition, petitioner asserts, instead should have been presented as part of a single instruction on the definition of "sexual intercourse," rather than being divided into separate instructions.  The statutory definition of sexual intercourse, however, itself separates the terms "sexual intercourse" as used in "its ordinary meaning" of occurring "upon any penetration, however slight," and that of "sexual contact."  Indeed, like the jury instructions used at petitioner's criminal trial, the definition of "sexual contact" is provided its own separate statutory definition as well.  Accordingly, the undersigned finds no error, or prejudice to petitioner, in this regard.

Petitioner next contends that while the original criminal charging document used the term "sexual intercourse" in claiming he had committed rape, it did not mention the term "sexual contact."  This claim, however, was not raised in any of the state courts, or indeed in the federal *habeas corpus* petition that was filed with this Court.  In addition, petitioner fails to show that, even if this claim had been properly raised, he was prejudiced thereby.  As discussed above, petitioner's attempt to separate the terms "sexual contact" and "sexual intercourse" notwithstanding, the state statutory definition of the term "sexual intercourse" expressly includes "any act of sexual contact."  As such, the implication that he could not be found guilty of "rape by sexual contact" because the charging document did not specifically use that phrase is wholly without merit. See Petitioner's Reply to Respondent's Second Answer ("Petitioner's Reply"), p. 10 (Dkt. #35).

Petitioner also tries to equate the statutory definition of "sexual contact" with the attempt to commit the crime of rape, which he asserts is covered by other state criminal statutes, but with respect to which he was not charged. See id., p. 11.  Again, however, the state statutory definition of the crime of first degree rape expressly states that it may be established by proof of either actual sexual intercourse in its

REPORT AND RECOMMENDATION
Page - 11

ordinary meaning or "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.040(1)(c). Accordingly, "sexual contact" as employed in the state's definition of first degree rape does not constitute an "attempted" crime.

Petitioner's final argument relies on the "Note on Use" and "Comment" sections in sections 45.01 and 45.07 of the Washington Pattern Jury Instructions for criminal trials. He asserts that these "Note on Use" and "Comment" sections stand for the proposition that the "sexual contact" definition should not be used "when defining intercourse in connection with an instruction related to rape." See 11 Wash. Prac., Wash. Pattern Jury Instr. Crim., WPIC 45-01, Sexual Intercourse–Definition, Note on Use (2d ed). Notwithstanding the fact that the "Note on Use" and "Comment" sections, let alone the pattern jury instructions themselves, lack the force and effect law, petitioner takes this statement completely out of context.

The "Comment" section to WPIC 45.01 states in relevant part as follows:

> The phrase "sexual contact" in the last paragraph [of the instruction regarding the definition of sexual intercourse] comes from RCW 9A.44.010(1)(c), and it is specifically a part of the definition of sexual intercourse. In this context, the term "sexual contact" should not be further defined with the statutory definition found in RCW 9A.44.010(2). Incorporating the statutory definition of "sexual contact" into the instruction above would improperly add a specific intent requirement ("for purposes of sexual gratification") to the crime of rape. Sexual gratification is not an element of the charge of rape, whether it is committed through sexual intercourse in the ordinary sense or through oral-genital or anal-genital contact. State v. Gurrola, 69 Wn.App. 152, 848 P.2d 199 (1993); State v. Brown, 78 Wn.App. 891, 899 P.2d 34 (1995).

Id., WPIC 45.01, Sexual Intercourse–Definition, Comment. The "Comment" section to WPIC 45.07 contains the following further statement:

> Even though the statutory definition of "sexual intercourse" applicable to rape cases includes, at RCW 9A.44.010(1)(c), "any act of *sexual contact* between persons involving the sex organs of one person and the mouth or anus of another person …"(emphasis added), two divisions of the [Washington State] Court of Appeals have held that the statutory definition of sexual contact reflected in this instruction is not applicable to rape crimes. State v. Brown, 78 Wn.App. 891, 899 P.2d 34 (1995); State v. Gurrola, 69 Wn.App. 152, 848 P.2d 199 (1993). "[W]hen referring to rape crimes, the third alternative of 'sexual intercourse' as defined in RCW 9A.44.010(1)(c) pertains to mere 'contact' between persons involving the sex organs of one person and the mouth or anus of another person." Brown, 78 Wn.App. at 896, 899 P.2d 34. See the Comment to WPIC 45.01, Sexual Intercourse—Definition. The definition continues to be applicable to crimes of first, second and third degree child molestation, second degree sexual misconduct with a minor, and indecent liberties, which all explicitly mention the term "sexual contact." 78 Wn.App. at 895, 899 P.2d 34.

Id., WPIC 45.07, Sexual Contact–Definition, Comment.

It is true, as noted above, that these two "Comment" sections state that the statutory definition of

the term "sexual contact" should not be used as part of the definition of "sexual intercourse" for the crime of rape.  As clearly can be seen, however, the prohibition against such use applies only to the extent that "sexual contact" is "not be further defined with the statutory definition found in RCW 9A.010(2)," which "would improperly add a specific intent requirement ('for purposes of sexual gratification') to the crime of rape." Id., WPIC 45-01, Comment; see also id., WPIC 45-07, Comment ("[W]hen referring to rape crimes, the third alternative of 'sexual intercourse' as defined in RCW 9A.44.010(1)(c) pertains to mere 'contact.'") (quoting State v. Brown, 78 Wn. App. 891, 899 (1995)).

This also reflects the current state of the law in Washington concerning use of the definitions of the terms "sexual intercourse" and "sexual contact" in referring to rape crimes.  That is, under Washington law, "intent is not an element of rape." Brown, 78 Wn. App. at 894 ("Rape criminalizes nonconsensual sexual intercourse *regardless of criminal intent or knowledge*.") (emphasis in original) (citation omitted). In this way, the crime of rape is unlike those "[o]ffenses such as child molestation or indecent liberties," which "reasonably require a showing of sexual gratification because the touching may be inadvertent." Id. at 895; see also State v. Gurrola, 69 Wn. App. 152, 157 (1993).

In contrast, the Washington State Court of Appeals noted in Brown that "public policy militates against intent being an element of rape:

> For policy reasons it makes sense that the Legislature would focus on the issue of the victim's consent, or rather lack thereof, rather than the perpetrator's subjective assessment of the situation.  To do otherwise would lead to the ludicrous result that a perpetrator could be exonerated simply by arguing that he did not know the victim's expressed lack of consent was genuine or that he did not intend to have nonconsensual sexual intercourse with the victim.

Brown, 78 Wn. App. At 895. (citation omitted).  As such, the court of appeals, as noted in the Comment section to WPIC 45.07 regarding the definition of the term "sexual contact," expressly found that "when referring to rape crimes, the third alternative of 'sexual intercourse' as defined in RCW 9A.44.010(1)(c) pertains to mere '*contact*.'" Id. at 896 (emphasis in original).

Given the above state of the law in Washington, it is clear then that a jury instruction which allows for proof of "sexual intercourse" on the basis of "sexual contact" as an alternative to proof of actual "penetration" is in itself not improper.  Further, while, as just discussed, the definition of "sexual contact" when used in referring to the crime of rape does not include a requirement that there be a showing of "sexual gratification," inclusion of that requirement in the jury instructions at petitioner's criminal trial was

not prejudicial to him.  Again, his protestations to the contrary, as the Washington State Court of Appeals correctly stated in affirming petitioner's conviction:

> The instruction simply required a finding that any sexual contact was done for the purpose of sexual gratification.  If anything, the instruction increased the State's burden of proof by unnecessarily requiring proof that Webb committed the rape for the purpose of sexual gratification.  Sexual gratification is not an element of rape; thus, the State assumed a burden not required by the statute defining rape.  Moreover, Webb's intent was not an issue.  Rather, he denied the rape.

Record, Exhibit 3, pp. 12-13.  Petitioner's last argument thus fails here as well.

Accordingly, the undersigned finds to the extent the particular jury instructions at issue in this case were defective – i.e., by including the requirement that "sexual gratification" be shown – that defect did not prejudice petitioner, and thus did not so infect his entire criminal trial that the resulting conviction violated his due process rights.[3]  See Carriger, 971 F.2d at 334.  As such, petitioner has failed to show that the state courts' decisions on this issue were either "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

IV.   Insufficiency of the Evidence Claim

Petitioner claims that the medical and other evidence presented during his trial was insufficient to prove the "sexual intercourse" element of the crime of first degree rape.  Specifically, petitioner argues that had the alleged improper jury instructions discussed above not been presented, and considering the lack of definitive testimony indicating that actual penetration had occurred, the jury would not have convicted him of that crime.  As discussed above, however, petitioner has failed to show that any error in the jury instructions constituted a violation of his constitutional rights or otherwise prejudiced him.  With respect to his argument regarding the sufficiency of the trial testimony and other evidence, furthermore, petitioner merely is attempting to re-argue the facts of his case.

A petitioner alleging "the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." Jackson v. Virginia, 443 U.S. 307, 321 (1979).  The relevant question in such

---

[3]Nor does it also appear that any such defect would violate petitioner's right to a fair trial under state law. See State v. Tili, 139 Wn.2d 107, 127 (1999) ("Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case."); see also Brown v. Spokane Co. Fire Protection Dist. No. 1, 100 Wn.2d 188, 194 (1983).

REPORT AND RECOMMENDATION
Page - 14

insufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original); see also Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990).

In order to "overturn a jury's conviction based on insufficient evidence," therefore, the Court "must find that no rational jury could conclude beyond a reasonable doubt" the petitioner "committed the crimes charged." United States v. Guzman-Rivera, 900 F.2d 681, 683 (1st Cir. 1993). In doing so, the Court "must review the record in the light most favorable to the government and resolve all credibility issues in favor of the verdict." Id.; see also Duran, 895 F.2d at 612 (record viewed in light most favorable to prosecution); Herrera v. Collins, 506 U.S. 390, 402 (1993) (review limited to record evidence). As stated by the United States Supreme Court:

> [T]he prosecution need not affirmatively "rule out every hypothesis except that of guilt," . . . and . . . a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Wright v. West, 505 U.S. 277, 296 (1992) (quoting Jackson, 433 U.S. at 319, 326); see also Herrera, 506 U.S. at 402 (inquiry focuses not on whether trier of fact's guilt or innocence determination was correct, but rather on whether it's decision was rational) (emphasis in original).

Here, petitioner asserts the evidence presented in his case was insufficient because: (1) eyewitness testimony failed to indicate any sexual act was attempted or performed; (2) the victim's clothes were not dirty or torn; (3) a clump of hair found at the scene of the crime and attributed to the victim was not tested for a source match; (4) if a sexual act and, in particular, penetration had occurred, his knees would have been more severely injured and more blood stains would have been found on his clothing; (5) combing of the victim's pubic hairs did not come back matching petitioner; (6) improper reliance was placed on both the victim's testimony and that of one of the police detectives involved in the case; and (7) the medical doctor and nurse practitioner who examined the victim found no physical evidence to suggest that a rape in fact occurred. Second Amended Petition, pp. 5(c)-5(e).

In appealing his conviction to the Washington State Court of Appeals, petitioner focused on the testimony of the victim and the medical doctor in arguing that the evidence presented was insufficient to convict him. In rejecting petitioner's arguments, the court of appeals stated as follows:

Webb points to Garner's testimony and argues that she could not remember what happened, that she did not believe Webb was "successful" in completing the act of sexual intercourse, and that Garner only referred to "attempts" at intercourse. Webb has taken her statements out of context. Garner testified that, when told the doctor she had been raped five times, she was referring to "[a]ttempts . . . [t]he ways of doing it." She said Webb was not successful "the first time he was on top of me." But she later testified that she, "didn't believe he did [ejaculate], but he did enter me." This statement, viewed in the light most favorable to the prosecution is sufficient to prove that Webb engaged in sexual intercourse with Garner. Sexual intercourse "occurs upon any penetration, however slight." RCW 9A.44.010.

Webb also cites the testimony of Dr. Holmes, who examined Garner after the rape but found no seminal fluid or evidence of physical trauma that would indicate that penetration had occurred. However, Dr. Holmes testified that it is possible for a woman who has previously had intercourse to show no signs of physical trauma, even if force is used. He noted that Garner had previously given birth to a child and testified that the absence of physical trauma was not inconsistent with Garner's statements regarding rape. We defer to the trier of fact on the persuasiveness of the evidence.

Record, Exhibit 3, pp. 8-9. The transcript entirely supports the state court's findings in this regard. See, e.g., Record, Exhibit 6, pp. 130-31, 140-45, Exhibit 7, pp. 213-15, 224-27, 230-31, 233-39, 242-43, 272-77, 282-83, 290-91, 308-09.

The transcript also clearly shows that, viewing the testimonial evidence in the light most favorable to, and resolving all conflicting inferences in favor of, the prosecution regarding petitioner's other claimed instances of insufficient evidence, a rational jury could have found him guilty of the crime of rape in the first degree beyond a reasonable doubt. For example, testimony was provided that "a large clump of hair" was found in the same area where clothing and other personal items belonging to the victim, evidence of blood, and what later turned out to be petitioner's check were found Id., Exhibit 6, pp. 159-60, 162-63, Exhibit 7, p. 280. The fact that the clothing may not have appeared as dirty or torn as petitioner feels it should have been does not deprive the jury of its ability to draw its own inferences. The same thing is true with respect to the other specific evidentiary points petitioner raises, particularly in light of the testimony of the victim and the medical doctor noted above.

Accordingly, petitioner has failed to show the state courts' decisions on petitioner's claim that the evidence presented at his criminal trial was insufficient to convict him to be "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

V.    Trial Court Abuse of Discretion Claim

Petitioner claims the trial court abused its discretion by allowing to be presented a jury instruction, which permitted the state "to find guilt of a non-existent crime . . . through alternate means." Second

Amended Petition, pp. 5(e)-5(f).  In particular, petitioner protests the allowance of the instruction which defined "sexual contact" to mean "any touching of the sexual or other intimate parts of a person done for the purposes – or purpose – of gratifying sexual desires of either party." Id. at p. 5(e); Record, Exhibit 8, p. 450.  As discussed above, however, while, as noted by both this Court and the Washington State Court of Appeals, the jury instructions, though incorrect under state law with respect to inclusion of the "sexual gratification" language, did not prejudice him. Id., Exhibit 3, p. 12.  Nor, also as discussed above, did use of that language violate any of petitioner's federal constitutional rights.

Accordingly, petitioner has failed to show the trial court abused its discretion by allowing the state to present the above noted instructions, and, therefore, also has not shown the state courts' decisions on petitioner's claim regarding the issue of abuse of discretion was "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

VI.   Ineffective Assistance of Counsel Claim

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Strickland v. Washington, 466 U.S. 668, 686 (1984) (right to counsel is right to effective assistance of counsel).  When ineffective assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Counsel's representation must have been "so defective as to require reversal of a conviction." Id. at 687; see also Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) ("Only those petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ.").  To prevail on such a claim, the defendant not only must show that "counsel's performance was deficient," but that "the deficient performance prejudiced the defense." Strickland, 466 U.A. at 687.  Thus, unless both of these showings are made, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

There also is a "strong presumption" that the performance of counsel "falls within the 'wide range of professional assistance.'" Kimmelman, 477 U.S. at 381.  With respect to attorney performance, the proper standard to be used "is that of reasonably effective assistance" under "prevailing professional

REPORT AND RECOMMENDATION
Page - 17

norms." Strickland, 466 U.S. at 687-88. Therefore, "the defendant must show that counsel's

representation fell below an objective standard of reasonableness." Id. at 688; United States v. Vincent,

758 F.2d 379, 381 (9th Cir. 1985) (defendant must show counsel's errors reflect failure to exercise skill,

judgment or diligence of reasonably competent attorney).

Counsel, furthermore, has "wide latitude in deciding how best to represent a client" and "making

tactical decisions." Yarborough, 540 U.S. at 5; Strickland, 466 U.S. at 689. The competence of counsel

"is presumed," and thus "[t]he reasonableness of counsel's performance is to be evaluated from counsel's

perspective at the time of the alleged error and in light of all the circumstances." Kimmelman, 477 U.S. at

381, 384. Not surprisingly, therefore, "the standard of review is highly deferential." Id. at 381. As the

Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy for a court, examining counsel's
> defense after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable. A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls within
> the wide range of reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the challenged action "might
> be considered sound trial strategy."

Strickland, 466 U.S. at 689 (citations omitted).

As noted above, to prevail on an ineffective assistance of counsel claim, the defendant also must

"affirmatively prove prejudice." Id. at 693. In other words, it is not enough to show that "particular errors

of counsel were unreasonable," and that they had "some conceivable effect on the outcome" of the trial. Id.

Rather, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is that

which is "sufficient to undermine confidence in the outcome." Id. When determining whether prejudice

exists, the court "'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477

U.S. at 381 (citing Strickland, 466 U.S. at 695).

Petitioner raises five specific issues on which he bases his claim that the counsel he received at his

criminal trial was constitutionally ineffective, each of which is addressed below:

A.     Objections to the Jury Instructions Used at Trial

First, petitioner claims his counsel was ineffective by not objecting to the definition of "sexual

1   contact" contained in the jury instructions discussed in detail above.  Again, however, while it was

2   incorrect under state law to include the requirement of "sexual gratification" in those instructions, this

3   merely added an increased burden the state, not petitioner, had to meet, and thus did not prejudice him, let

4   alone violate any of his federal constitutional rights.

5          B.      Cross-examination of the Victim

6          Petitioner next claims his counsel was ineffective by not properly cross-examining the victim, which

7   in turn caused the trial court to deny him the ability to present the rebuttal testimony of his private

8   investigator.  At the trial, defense counsel attempted to present the testimony of a private investigator to

9   impeach the victim's testimony that she told medical personnel that she had been raped five times, based on

10  a different version of the events the victim allegedly had told that investigator during an interview.  Record,

11  Exhibit 8, pp. 425-27.  The trial court, however, sustained the state's objection on the basis that defense

12  counsel had failed to give the victim a reasonable opportunity to respond to the inquiry being sought via

13  the testimony of the private investigator. Id. at p. 427.

14         The record is not clear why petitioner's counsel did not or chose not to pursue this inquiry during

15  cross examination of the victim when she was on the stand.  Petitioner contends it was unreasonable for his

16  counsel to not cross-examine the victim regarding the "multiple inconsistencies and stories" he alleges she

17  gave in her testimony, particularly in light of his claim that the private investigator was the only person who

18  was investigating his case. Petitioner's Reply, p. 25.  Petitioner rejects the contention that his counsel's

19  failure or decision not to do so was a strategic or tactical decision.

20         The Court, however, must be mindful of the "strong presumption" that defense counsel's "conduct

21  falls within the wide range of reasonable professional assistance," and that the challenged action "might be

22  considered sound trial strategy," which petitioner has the burden to overcome. Strickland, 466 U.S. at 689

23  (citations omitted).  Petitioner has not done so here, other than to merely assert that his counsel should

24  have done something different than what she did.  Indeed, "counsel's tactical decisions at trial, such as

25  refraining from cross-examining a particular witness or from asking a particular line of questions, are given

26  great deference." Dows v. Wood, 211 F.3d 480, 487 (9th Cir. 2000) (citing Strickland, 466 U.S. at 688-

27  89).  Further, as pointed out by respondent, even if it could be said that his counsel so erred, petitioner has

28  failed to show the required prejudice resulting therefrom.

           The trial transcript shows that defense counsel sought to introduce testimony from the private

investigator that the victim told him petitioner had raped her vaginally two to three, as opposed to five, times, followed by a failed attempt at anal penetration and finally the demand and performance of oral sex. Record, Exhibit 8, pp. 426-27. Such testimony, while certainly calling into question the victim's recall of the specific sequence of the events, still shows that "sexual intercourse" occurred, both in its ordinary meaning of "any penetration, however slight" and the alternative "sexual contact" – i.e., "involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(1). In other words, this specific element of the crime of first degree rape still would have been met.

C.   Objections to Crime Scene Photographs

Petitioner further claims his counsel was ineffective by not objecting to crime scene photographs taken by the police being introduced as evidence at his criminal trial, "'without' any DNA analyzation to [']match'" him to the evidence depicted therein. Second Amended Petition, p. 5(g). Specifically, he argues the evidence of blood shown by those photographs was not tested to show that it matched him or even that it was in fact blood. See, e.g., Record, Exhibit 6, pp. 162-63, 190-92, 200. Again, however, the Court must be mindful of the "strong presumption" that his counsel's conduct fell "within the wide range of reasonable professional assistance," and that her decision not to conduct such testing might have been "sound trial strategy." Strickland, 466 U.S. at 689 (citations omitted).

Once more, petitioner has not made any meaningful attempt to meet his burden of overcoming this strong presumption, other than to merely assert that such testing should have been conducted. In addition, there was plenty of other evidence on which the jury could have found that the substance depicted in the photographs was indeed blood and was the blood of the victim and/or petitioner, including the testimony of the police detective who took the photographs and investigated the crime scene, the testimony of the police officer, medical personnel and other witnesses who had contact with the victim shortly after the crime occurred, and the testimony of the victim herself regarding the beating she endured. Accordingly, to the extent there was any error here, the undersigned again finds no prejudice.

D.   Merger of the Rape and Assault Charges

Petitioner claims his counsel was ineffective by not having the first degree rape and second degree assault charges merged, thereby "allowing the state to rely on the conduct of one crime" to prove another. Second Amended Complaint, p. 5(g). Essentially, petitioner is arguing that this failure to merge the two charges prejudiced his defense, because it "allowed the state to have the jury assume" that if he "would

REPORT AND RECOMMENDATION
Page - 20

1   deny an assault," then "he would also be lying about a rape." Petitioner's Reply, p. 27.  In Washington,

2   however, "[t]he [merger] doctrine arises only when a defendant has been found guilty of multiple charges,

3   and the court *then* asks if the Legislature intended only one punishment for the multiple convictions."State

4   v. Sweet, 138 Wn.2d 466, 478 (1999) (citation omitted) (emphasis in original).

5         Accordingly, while, as found by the Washington State Court of Appeals, the trial court erred in not

6   merging petitioner's first degree rape and first degree assault convictions for purposes of sentencing, there

7   was no prejudice to him with respect to the jury's guilt determination at his actual trial.  Indeed, the record

8   shows that petitioner's sentence was overturned by the court of appeals and remanded to the trial court for

9   sentencing within the proper range. See Record, Exhibits 3 and 17.  Thus, no issue remains for resolution

10   regarding petitioner's originally incorrect sentence as well.

11        E.      Defense Submission of Jury Instructions

12         Finally, petitioner argues his counsel was ineffective for failing to submit her own jury instructions

13   "that would show that the evidence presented contradicted a sex act where the state failed to prove" sexual

14   intercourse had occurred under Washington state law. See Petitioner's Reply, p. 24; Second Amended

15   Petition, p. 5(g).  This claim, however, is essentially the same as the one in which petitioner alleges his

16   counsel was ineffective for failing to object to the jury instructions submitted by the state.  As explained

17   above, however, no constitutional error resulted from the presentation of such instructions to the jury.  As

18   such, as with his other ineffective assistance of counsel claims discussed above, petitioner again has failed

19   to meet his burden of overcoming the strong presumption that his counsel acted  "within the wide range of

20   reasonable professional assistance" in not submitting her own jury instructions.

21                   CONCLUSION

22         For the reasons set forth above, petitioner has failed to show that he is entitled to federal *habeas*

23   *corpus* relief.  Accordingly, the Court should deny petitioner's petition.

24         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b),

25   the parties shall have ten (10) days from service of this Report and Recommendation to file written

26   objections thereto. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those

27   objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

28   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **December 1,**

1    **2006**, as noted in the caption.

2         DATED this 7th day of November, 2006.

3

4

5                                        Karen L. Strombom
                                         United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28